**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:10-CV-24620-DLG**

**CLOSED
CIVIL
CASE**

---

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **ALCATEL-LUCENT, S.A.,** | : |
| | : |
| **Defendant.** | : |
| | : |

---

### FINAL JUDGMENT AS TO DEFENDANT ALCATEL-LUCENT, S.A.

The Securities and Exchange Commission having filed a Complaint and Defendant Alcatel-Lucent, S.A. ("Alcatel") having, solely for purposes of this action: entered a general appearance; consented to the Court's jurisdiction over it and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except, solely for purposes of this action, as to subject matter and personal jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

### I.

**IT IS ORDERED AND ADJUDGED** that Alcatel and Alcatel's subsidiaries, affiliates, successors, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 30A of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78dd-1] by use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of any offer,

payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to—

(1)     any foreign official for purposes of—

(A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or

(B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Alcatel in obtaining or retaining business for or with, or directing business to, any person;

(2)     any foreign political party or official thereof or any candidate for foreign political office for purposes of—

(A)(i) influencing any act or decision of such party, official, or candidate in its or his official capacity, (ii) inducing such party, official, or candidate to do or omit to do an act in violation of the lawful duty of such party, official, or candidate, or (iii) securing any improper advantage; or

(B) inducing such party, official, or candidate to use its or his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Alcatel in obtaining or retaining business for or with, or directing business to, any person; or

(3)     any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official, to any foreign political party or official thereof, or to any candidate for foreign political

office for purposes of—

(A)(i) influencing any act or decision of such foreign official, political party, party official, or candidate in his or its official capacity, (ii) inducing such foreign official, political party, party official, or candidate to do or omit to do any act in violation of the lawful duty of such foreign official, political party, party official, or candidate, or (iii) securing any improper advantage;

(B) inducing such foreign official, political party, party official, or candidate to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist Alcatel in obtaining or retaining business for or with, or directing business to, any person.

## II.

**IT IS FURTHER ORDERED AND ADJUDGED** that Alcatel and Alcatel's subsidiaries, affiliates, successors, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(2)(A) of the Exchange Act , 15 U.S.C. § 78m(b)(2)(A), by failing to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of Alcatel's assets.

## III.

**IT IS FURTHER ORDERED AND ADJUDGED** that Alcatel and Alcatel's subsidiaries, affiliates, successors, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly,

Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

## IV.

**IT IS FURTHER ORDERED AND ADJUDGED** that Alcatel and Alcatel's subsidiaries, affiliates, successors, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 13(b)(5) of the Exchange Act , 15 U.S.C. § 78m(b)(5), by failing to failing to implement a system of internal controls or knowingly falsifying any book, record, or account.

### V.

## DISORGEMENT

**IT IS FURTHER ORDERED AND ADJUDGED** that Alcatel is liable for disgorgement in the amount of $28,990,937, representing profits gained as a result of the conduct alleged in the Complaint, and pre-judgment interest in the amount of $16,381,063, for a total of $45,372,000. Alcatel shall satisfy this obligation by paying $45,372,000 within 60 days after entry of this Final

Judgment by wire transfer, certified check, bank cashier's check, United States postal money order or other mutually agreed means, payable to the Securities and Exchange Commission. The payment shall be made to the attention of the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a cover letter identifying Alcatel as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment.  Alcatel shall simultaneously transmit photocopies of or other suitable proof of the payment of disgorgement and letter to Thierry Olivier Desmet, Esq., U.S. Securities & Exchange Commission, 801 Brickell Avenue, Suite 1800, Miami, FL 33131.  By making this payment, Alcatel relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Alcatel.  Alcatel shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.  The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury.

## VI.

### INDEPENDENT COMPLIANCE MONITOR

1.      Alcatel agrees to engage an independent compliance monitor that is a French national or French law or accounting firm (the "Monitor") with demonstrated expertise in helping companies comply with the Foreign Corrupt Practices Act, 15 U.S.C. §§78dd-1, et seq. (the "FCPA") and not unacceptable to the staff of the Securities and Exchange Commission (the "Commission") within sixty (60) calendar days of the entry of the Final Judgment. The Monitor will, for a period of up to three (3) years from the date of its engagement (the "Term of the Monitorship"), evaluate, in the manner set forth in paragraphs 2 through 8 below, the effectiveness of Alcatel's internal controls, record-keeping, and financial reporting policies and procedures as they relate to Alcatel's current

and ongoing compliance with the books and records, internal accounting controls and anti-bribery provisions of the FCPA, codified at Sections 30A, 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78dd-1, 78m(b)(2)(A), and 78m(b)(2)(B)] and other applicable counterparts (collectively, the "anti-corruption laws") and take such reasonable steps as, in its view, may be necessary to fulfill the foregoing mandate (the "Mandate").

2.    Alcatel shall cooperate fully with the Monitor and the Monitor shall have the authority to take such reasonable steps as, in its view, may be necessary to be fully informed about Alcatel's compliance program within the scope of the Mandate in accordance with the principles set forth herein and applicable law, including applicable data protection and labor laws and regulations, such as, among others, Article 1 of French Law No. 68-678 of July 26, 1968, as amended by Law No. 80-538 of July 16, 1980 (the "Blocking Statute"). To that end, Alcatel shall: (1) facilitate the Monitor's access to Alcatel's documents and other information and resources, (2) not limit such access, except as provided in this paragraph, and (3) provide guidance on applicable local law (such as relevant data protection and labor law) to allow the Monitor to fulfill its Mandate. Alcatel shall provide the Monitor with access to all information, documents, records, facilities, and/or employees, as reasonably requested by the Monitor, that fall within the scope of the Mandate of the Monitor under the Final Judgment.

a.    The parties agree that the retention of the Monitor does not establish an attorney-client, auditor-client, or similar relationship between Alcatel and the Monitor which would otherwise prevent the Monitor from fulfilling its Mandate in accordance with this Consent.

b.    In the event that Alcatel seeks to withhold from the Monitor access to information, documents, records, facilities, and/or employees of Alcatel that may be subject to a claim of attorney-client privilege, the attorney work-product doctrine, or similar legal relationships,

or where Alcatel reasonably believes production would otherwise be inconsistent with applicable law, Alcatel shall work cooperatively with the Monitor to resolve the matter to the satisfaction of the Monitor. If the matter cannot be resolved, at the request of the Monitor Alcatel shall promptly provide written notice to the Monitor and to any French Authority identified by the Commission ("the French Authority"). The French Authority may then transmit such information in accordance with French law to the Commission. Such notice shall include a general description of the nature of the information, documents, records, facilities, and/or employees that are being withheld, as well as the basis for the claim. The Commission staff may then consider whether to make a further request for access to such information, documents, records, facilities and/or employees, to be provided by Alcatel to the French Authority. To the extent Alcatel has provided information to the Commission staff in the course of the investigation leading to this action pursuant to a non-waiver of privilege agreement, Alcatel and the Monitor may agree to production of such information to the Monitor pursuant to a similar non-waiver agreement.

c.       Except as provided in this paragraph, Alcatel shall not withhold from the Monitor any information, documents, records, facilities, and/or employees on the basis of an attorney-client privilege, work-product claim, or other similar legal relationship.

3.       To carry out the Mandate, during the Term of the Monitorship, the Monitor shall conduct a yearly review and prepare a yearly report for three (3) years, for a total of three reviews and three reports. With respect to each review, after consultation with Alcatel, the Monitor shall prepare a written work plan that shall be submitted no fewer than sixty (60) calendar days prior to commencing each review to Alcatel and the French Authority. The French Authority may then transmit such information in accordance with French law to the Commission. Alcatel and the Commission shall have no more than thirty (30) calendar days after receipt of the written work plan

to provide comment to the Monitor about the work plan. The Monitor's work plan for the initial review shall include such steps as are reasonably necessary to conduct an effective initial review in accordance with the Mandate, including developing an understanding, to the extent the Monitor deems appropriate, of the facts and circumstances surrounding any violations that may have occurred before the entry of the Final Judgment, but in developing such understanding the Monitor is to rely to the extent possible on available information and documents provided by Alcatel. It is not intended that the Monitor will conduct its own inquiry into those historical events. In developing each work plan and in carrying out the reviews pursuant to such plans, the Monitor is encouraged to coordinate with Alcatel personnel, including auditors and compliance personnel. To the extent the Monitor deems appropriate, it may rely on Alcatel processes, on the results of studies, reviews, audits, and analyses conducted by or on behalf of Alcatel, and on sampling and testing methodologies. The Monitor is not expected to conduct a comprehensive review of all business lines, all business activities, or all markets. Any disputes between Alcatel and the Monitor with respect to the work plan shall be decided by the Commission staff in its sole discretion. The Monitor will send each report to the French Authority, which may forward such information in accordance with French law to the Commission.

4.      The initial review shall commence no later than one hundred twenty (120) calendar days from the date of the engagement of the Monitor (unless otherwise agreed by Alcatel, the Monitor, and the Commission staff), and the Monitor shall issue a written report within one hundred twenty (120) calendar days of initiating the initial review, setting forth the Monitor's assessment and making recommendations reasonably designed to improve the effectiveness of Alcatel's program for ensuring compliance with the anti- corruption laws. The Monitor is encouraged to consult with Alcatel concerning its findings and recommendations on an ongoing basis, and to consider and

reflect Alcatel's comments and input to the extent the Monitor deems appropriate. The Monitor need not in its initial or subsequent reports recite or describe comprehensively Alcatel's history or compliance policies, procedures, and practices, but rather may focus on those areas with respect to which the Monitor wishes to make recommendations for improvement or which the Monitor otherwise concludes merit particular attention, if any. The Monitor shall provide the report to the Managing Board of Alcatel and contemporaneously transmit copies to the French Authority. The French Authority may then transmit such information in accordance with French law to the Commission. After consultation with Alcatel, the Monitor may extend the time period for issuance of the report for up to sixty (60) calendar days with prior written approval of the Commission staff.

5.      Within one hundred and twenty (120) calendar days after receiving the Monitor's report, Alcatel shall adopt all recommendations in the report unless within sixty (60) calendar days after receiving the report, Alcatel notifies the Monitor and the Commission staff in writing of any recommendations Alcatel considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly expensive, or otherwise inadvisable. It shall not be deemed unduly burdensome if information otherwise protected by Article 1 of French Law No. 68-678 of July 26, 1968, modified by Law no. 80-538 of July 16, 1980 may be provided to the Commission in accordance with French law via the French Authority or in some other manner. With respect to any recommendation Alcatel considers unduly burdensome, inconsistent with local or other applicable law or regulation, impractical, unduly expensive, or otherwise inadvisable, Alcatel need not adopt that recommendation within one hundred and twenty (120) calendar days after receiving the Monitor's report, but shall propose in writing to the Monitor an alternative policy, procedure, or system designed to achieve the same objective or purpose. As to any recommendation on which Alcatel and the Monitor do not agree, the parties shall attempt in good faith to reach an agreement

within forty-five (45) calendar days after Alcatel serves the written notice.  In the event Alcatel and the Monitor are unable to agree on an acceptable alternative proposal, Alcatel shall promptly consult with the Commission staff, which will make a determination as to whether Alcatel should adopt the Monitor's recommendation or an alternative proposal, and Alcatel shall abide by that determination. During the time period in which a Commission determination is pending, Alcatel shall not be required to implement any contested recommendation.  With respect to any recommendation the Monitor determines cannot reasonably be implemented within one hundred and twenty (120) calendar days after receiving the report, the Monitor may extend the time period for implementation with prior written approval of the Commission staff.

6.     The Monitor shall undertake two (2) follow-up reviews to carry out the Mandate. Within one hundred and twenty (120) calendar days of initiating each follow-up review, the Monitor shall: (a) complete the review; (b) certify whether the compliance program of Alcatel, including its policies and procedures, is reasonably designed and implemented to detect and prevent violations within Alcatel of the anti-corruption laws; and (c) report on the Monitor's findings in the same fashion as set forth in Paragraph 6 with respect to the initial review.  The second review shall commence one year after the initial review commenced.  The third review shall commence two years after the first review commenced.  After consultation with Alcatel, the Monitor may extend the time period for these follow-up reviews for up to sixty (60) calendar days with prior written approval of the Commission staff.

7.     In undertaking the assessments and reviews described in Paragraphs 3 through 6, the Monitor shall formulate conclusions based on, among other things: (a) inspection of relevant documents, including Alcatel's current anti-corruption policies and procedures; (b) on-site observation of selected systems and procedures of Alcatel at sample sites, including internal controls

and record-keeping and internal audit procedures; (c) meetings with and interviews of relevant employees, officers, directors, and other persons at mutually convenient times and places; and (d) analyses, studies, and testing of Alcatel's compliance program with respect to the anti-corruption laws.

8.      Should the Monitor, during the course of its engagement, discover that questionable or corrupt payments or questionable or corrupt transfers of property or interests may have been offered, promised, paid, or authorized by any entity or person within Alcatel, or any entity or person working directly or indirectly for Alcatel, or that related false books and records may have been maintained relating to Alcatel either (i) after the date of the Final Judgment or (ii) that have not been adequately dealt with by Alcatel (collectively "improper activities"), the Monitor shall promptly report such improper activities to Alcatel's General Counsel or Audit Committee for further action. If the Monitor believes that any improper activity or activities may constitute a significant violation of law, the Monitor shall also report such improper activity in writing to the French Authority. The French Authority may then transmit such information in accordance with French law to the Commission. The Monitor shall disclose improper activities in its discretion directly to the French Authority, and not to the General Counsel or Audit Committee, if the Monitor believes that disclosure to the General Counsel or the Audit Committee would be inappropriate under the circumstances. The Monitor shall address in its reports the appropriateness of Alcatel's response to all improper activities. Further, in the event that Alcatel or any entity or person working directly or indirectly within Alcatel refuses to provide information necessary for the Monitor to perform its duties, if the Monitor believes that such refusal is without just cause the Monitor shall disclose that fact in writing to the French Authority. The French Authority may then transmit such information in accordance with French law to the Commission. Alcatel shall not take any action to retaliate

against the Monitor for any such disclosures.  The Monitor may report to the French Authority any criminal or regulatory violations by Alcatel or any other entity or person discovered in the course of performing its duties.  The French Authority may then transmit such information in accordance with French law to the Commission.

9.      Alcatel shall require the Monitor to enter into an agreement with Alcatel that provides that for the Term of the Monitorship.  For a period of two (2) years thereafter, the Monitor shall not enter into any additional employment, consultant, attorney-client, auditing or other professional relationship with Alcatel, or any subsidiaries, affiliates, successors, directors, officers, employees, or agents.  The agreement also shall provide that the Monitor will require that any firm with which he or she is affiliated or of which he or she is a member shall not, without prior written consent of the Commission staff, enter into any employment, consultant, agency, attorney-client, auditing, or other professional relationship with Alcatel or any affiliates, directors, officers, employees, or agents acting in their capacity as such for the Term of the Monitorship and for a period of two (2) years thereafter.  To ensure the independence of the Monitor, Alcatel shall not have the authority to terminate the Term of the Monitorship without the prior written approval of the Commission staff.

10.      At least annually, and more frequently if appropriate, representatives from Alcatel and the Commission staff will meet to discuss the Monitorship and any suggestions, comments, or improvements Alcatel may wish to discuss with or propose to the Commission staff.

## VII.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Alcatel shall comply with all of the undertakings and agreements set forth therein.

## VIII.

**IT IS FURTHER ORDERED AND ADJUDGED** that this Court shall retain jurisdiction

of this matter for the purposes of enforcing the terms of this Final Judgment for a period of sixty

(60) days.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of December,

2010.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE